```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                        :
INVESCO INVESTMENT SERVICES,                            :
INC.,                                                   :
                                                        :
                              Plaintiff,                :
                                                        :
               -against-                                :   **REPORT AND**
                                                        :   **RECOMMENDATION**
JONATHAN GROSSMAN and NORENE                            :
PFEFFER in her capacity as the Administrator            :   20-CV-4887 (ARR)(PK)
of the estate of Herschel Harry Pfeffer,                :
                                                        :
                              Defendants.               :
------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

Invesco Investment Services, Inc. ("Plaintiff" or "Invesco") brought this interpleader action against Jonathan Grossman ("Grossman") and Herschel "Harry" Pfeffer ("Harry Pfeffer" or "Harry"), who are competing claimants to a transfer-on-death ("TOD") brokerage account of which Invesco is the transfer agent. (*See* Compl., Dkt. 1.) On October 18, 2021, Norene Pfeffer, in her capacity as the Administrator of the Estate of Harry Pfeffer ("Norene Pfeffer" or "Norene"), was substituted as a defendant in place of Harry Pfeffer. (Order, Dkt. 36.)

Before the undersigned on referral from the Honorable Allyne R. Ross are Plaintiff's Motion for Default Judgment and Interpleader Relief ("Motion for Default Judgment," Dkt. 48) and Norene Pfeffer's Cross-Motion to Vacate the Entry of Default. ("Cross-Motion to Vacate Default," Dkt. 48-7.) For the reasons stated herein, I respectfully recommend that motion for default judgment and interpleader relief be denied, and that the motion to vacate the entry of default be granted.

1

## BACKGROUND

Plaintiff is the transfer agent for a TOD, or totten trust, brokerage account (the "Account") originally held as two accounts at OppenheimerFunds ("Oppenheimer") by Jack Pfeffer ("Jack Pfeffer" or "Jack"), who died in 2019. (Compl. ¶¶ 1-4, 24, 36.)

On October 14, 2011, Jack sent a letter to Oppenheimer requesting that it remove his brother Harry Pfeffer as the designated beneficiary of the accounts. (*Id.* ¶¶ 11-12; Letter dated Oct. 14, 2011, Ex. A to the Compl., Dkt. 1-4.) After instructing Jack to send a "signature guaranteed letter of instruction," Oppenheimer received a signed and guaranteed TOD Registration Form on November 22, 2011, which named Grossman as the beneficiary of the accounts. (*Id.* ¶¶ 13-14; TOD Registration Form dated Nov. 16, 2011, Ex. B to the Compl., Dkt. 1-5.)

On March 15, 2012, the Supreme Court of New York, Kings County, adjudged Jack to be a "person in need of a Guardian" and appointed the Vera Institute of Justice ("Vera") as his Guardian of the Property and Co-Guardian of the Person, and his niece Norene Pfeffer as his Co-Guardian of the Person. (*Id.* ¶ 15; Interim Order and Short Form Commission ("Interim Order"), Ex. C to the Compl., Dkt. 1-6.) In that capacity they were directed to, *inter alia*, transfer Jack to a new assisted living facility and serve as his personal representative for medical matters. (Interim Order at 3-5 (all references to ECF pagination).)

On August 20, 2012, Jack called Oppenheimer and stated that Grossman had "let him down" and he no longer wanted him to be the beneficiary of his accounts. (Compl. ¶ 16.) On August 29, 2012, Jack again called Oppenheimer, this time stating that the designation of Grossman as the beneficiary in 2011 was unauthorized. (*Id.* ¶ 17.) This call triggered a review by a representative of Oppenheimer's Fraud Department, who changed the beneficiary designation from Grossman back to Harry Pfeffer. (*Id.*)

On June 12, 2013, the Kings County Supreme Court issued a Final Guardianship Order, which, *inter alia*, specified that Vera, as Guardian of the Property, had authority over Jack's assets, including the Oppenheimer accounts, and instructed that Vera was required to retain any prior totten trust beneficiary designations made by Jack when opening or re-titling accounts. (Compl. ¶ 18; Order and Judgment ("Final Guardianship Order") at 10, 15 (all references to ECF pagination), Ex. D to the Compl., Dkt. 1-7).

Vera sent a letter to Oppenheimer indicating its guardianship over Jack and requesting a title change, describing Grossman as the beneficiary of the accounts. (Compl. ¶ 19; Vera Letter to Oppenheimer dated July 15, 2013, Ex. E to the Compl., Dkt. 1-8.) Oppenheimer requested that Vera submit a signature-guaranteed letter and account application; it also informed Vera that the beneficiary of the accounts was "no longer" Grossman. (Compl. ¶ 20; Oppenheimer Letter to Vera dated July 22, 2013, Ex. F to the Compl., Dkt. 1-9.) Vera sent the requested application on August 15, 2013, on which it designated as beneficiaries Grossman and Leon Pfeffer.[1] (Compl. ¶ 21; Vera Account Application, Ex. G to the Compl., Dkt. 1-10.)

Jack died on April 20, 2019. (Compl. ¶ 23.)

On September 16, 2019, Grossman contacted Invesco, which acquired Oppenheimer on May 24, 2019, to redeem the Account. (Compl. ¶¶ 24-25.) Invesco informed Grossman that there was uncertainty as to the identity of the applicable beneficiary and noted that "it seems [Vera] had incorrectly assumed…that Mr. Grossman was a TOD beneficiary of Mr. [Jack] Pfeffer's accounts" and that "the Guardian would not have been authorized to change the beneficiary to Mr. Grossman or anyone else when it became Guardian in 2013." (Compl. ¶ 29; Invesco Letter to Grossman dated Sept. 25, 2020, Ex. I to the Compl., Dkt. 1-12.)

---

[1] Leon Pfeffer was listed on a separate joint account with Jack Pfeffer, and no party seeks to have Leon Pfeffer named as a beneficiary. (Compl. ¶ 21.)

3

Plaintiff filed the Complaint on October 9, 2020. (Dkt. 1.)

Counsel for Grossman accepted service on his behalf on October 12, 2020. In his Answer, filed on November 30, 2020 and amended on December 9, 2020, Grossman asserted various counterclaims against Invesco for failing to transfer the Account to him, as well as a counterclaim against Invesco and a crossclaim against Harry Pfeffer, seeking declaratory judgment that Grossman is the rightful beneficiary of the Account. (*See* Answer, Dkt. 12; Am. Answer, Dkt. 13.)

Harry Pfeffer was served on October 28, 2020, when a copy of the Summons and Complaint was affixed to the door of his home and mailed to his home address. (Dkts. 7, 8.) Norene Pfeffer, who is Harry's daughter and was "acting as [her] father's round the clock nurse," discovered the Summons and Complaint among his papers in "late 2020." (Declaration of Norene Pfeffer in Support of Her Cross-Motion ("Pfeffer Decl.") ¶ 5, Dkt. 48-9.) She "did not realize that [her] father had to appear as a party … [and] thought Invesco was asking the Court to decide who should get the funds and that the Court would make a decision without [her] father having to appear as a party." (Pfeffer Decl. ¶ 6.) Nevertheless, a few weeks later, she reached out to several lawyers, one of whom explained that Harry Pfeffer would have to appear in court, but that the lawyer "was not willing to take the case." (*Id.* ¶ 8.) She then found another lawyer and "thought she was working on the case," but when she called to follow up several months later, the lawyer told Norene that "she was no longer able to take the case." (*Id.* ¶ 9.)

After Harry Pfeffer failed to answer or otherwise respond to the Complaint, Invesco requested a certificate of default, which the Clerk of Court entered on May 18, 2021. (Dkts. 24, 25.)

On September 27, 2021, Plaintiff informed the Court that Harry Pfeffer died on May 2, 2021, and Norene Pfeffer was declared administrator of his estate. (Pl. Letter dated Sept. 27, 2021, Dkt. 34.) Plaintiff was permitted to substitute Norene Pfeffer, in her capacity as the Administrator of the Estate of Harry Pfeffer, as a defendant on October 18, 2021. (Motion to Substitute Party, Dkt. 35;

4

Order dated Oct. 18, 2021.)  Counsel for Norene Pfeffer entered an appearance on November 12, 2021, and on November 16, 2021, sought leave to file a motion to vacate the entry of default. (Notice of Appearance dated Nov. 12, 2021; Letter Motion; Dkt. 39.)

Invesco's Motion for Default Judgment (Dkt. 48), Norene Pfeffer's Cross-Motion to Vacate Default (Dkt. 48-7), Grossman's Opposition to the Cross-Motion to Vacate Default ("Grossman Opp.," Dkt. 48-15), and Invesco's Memorandum of Law in Further Support of Its Motion for Default Judgment and Interpleader Relief and in Opposition to Defendant Norene Pfeffer's Cross-Motion to Vacate the Entry of Default ("Pl. Reply," Dkt. 48-19) were filed on March 2, 2022.

## DISCUSSION

Because a motion for default judgment may only be granted against a party for whom there is first an entry of default, *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011), I first address Norene Pfeffer's Cross-Motion to Vacate Default, to consider whether the entry of default entered by the Clerk of Court on May 18, 2021 against Harry Pfeffer should be vacated. (*See* Cross-Motion to Vacate Default.)

Plaintiff and Grossman both oppose the Cross-Motion to Vacate Default.

I. **Motion to Vacate Entry of Default**

   A. *Legal Standard*

Rule 55 of the Federal Rules of Civil Procedure provides that an entry of default may be set aside for "good cause." Fed. R. Civ. P. 55(c).  The Second Circuit has "established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *see also Bricklayers & Allied Craftworkers Local 2 Pension Fund ex rel. O'Sick v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015).

5

When the question is one of setting aside an entry of default—as opposed to a default judgment—these factors are assessed less rigorously, because there are fewer concerns about "the concepts of finality and litigation repose." *Enron Oil*, 10 F.3d at 96; *see also Sream Inc. v. Saakshi Enters. Inc.*, No. 16-CV-1408 (NG)(RML), 2017 WL 2633510, at *2 (E.D.N.Y. June 15, 2017) ("Importantly, the standard for vacating an entry of default pursuant to Rule 55(c) … is less rigorous than vacating a default judgment pursuant to Rule 60(b)." (emphasis in the original)). Furthermore, a court "must resolve all doubts in favor of the party seeking to vacate the certificate of default." *Sream*, 2017 WL 2633510, at *1. Finally, although "[t]he dispositions of motions [to vacate an entry of default] are left to the sound discretion of a district court …," the Second Circuit maintains an "oft-stated preference for resolving disputes on the merits." *Enron Oil*, 10 F.3d at 95.

### B. Analysis

#### 1. Willfulness

"'[W]illfulness,' in the context of a default, … refer[s] to conduct that is more than merely negligent or careless, but is instead egregious and … not satisfactorily explained." *Bricklayers*, 779 F.3d at 186 (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (second omission in original) (internal quotation marks omitted)). Even a defendant who was "grossly negligent" in failing to answer was not necessarily willful; "[r]ather, the defaulting party must have engaged in deliberate or egregious conduct." *Sream Inc.*, 2017 WL 2633510, at *2. Indeed, "a showing that a default was inadvertent is sufficient … to vacate a default judgment." *Global Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013), *aff'd in part and modified in part*, 612 F. App'x 11 (2d Cir. 2015).

Norene Pfeffer submitted a sworn declaration stating that, from the time he was served with the Complaint on October 28, 2020 until his death on May 2, 2021 at the age of 98, Harry Pfeffer suffered significant health issues, in that he was "housebound and unable to read" with "poor

6

eyesight," and was hospitalized three times during the last year of his life with two strokes and pneumonia. (Pfeffer Decl. ¶¶ 3-4, 7.) Plaintiff and Grossman do not contest these statements.

Because of the serious medical conditions leading up to his death six months after he was served with the Complaint, I find that Harry Pfeffer did not willfully fail to answer the Complaint or appear before this Court. *See, e.g., Sec. & Exch. C'mm'n v. Patel*, No. 3:21-CV-994 (SVN), 2022 WL 2704099 (D. Conn. July 12, 2022) (finding that defendant's delay of nine months in appearing to defend the case and respond to the complaint was not willful because he was recovering from a stroke).

Plaintiff and Grossman argue that the Court should consider Norene Pfeffer's actions during this time because she became "chargeable with knowing that an Answer had to be entered," even before she was named as a party on October 18, 2021. (Grossman Opp. at 5, 6-7; Pl. Reply at 3.) They note that Norene learned of the Complaint when she found a copy of it among Harry Pfeffer's papers in late 2020, and that, despite not knowing initially that her father's appearance was necessary, she consulted with attorneys who told her of his obligation to respond. (Pl. Reply at 3-4; Grossman Opp. at 6-7.) Plaintiff and Grossman cite no legal basis, however, for requiring that Norene Pfeffer respond to the Complaint on her father's behalf when she was not yet named as a party to the action.

Even if she did have some obligation to act at that time, Norene Pfeffer also faced hardships that limited her ability to do so. In addition to caring for her father full-time, she fractured two bones in her back in October 2020, which "left [her] in excruciating pain for around one year." After Harry died and she was named as administrator of his estate, she was "too emotionally distraught" to resume her search for a lawyer or engage in litigation. (Pfeffer Decl. ¶¶ 10, 12-13.) In light of these circumstances, I find that Norene Pfeffer did not act willfully or engage in deliberate or egregious conduct leading to default. *See, e.g., HICA Educ. Loan Corp. v. Feintuch*, No. 12-CV-5243 (ADS), 2013 WL 1898997, at *4 (E.D.N.Y. May 7, 2013) (finding that defendant's default was not willful because

7

defendant "was understandably distracted by the serious medical issues involving his then three-year-old daughter Evienne, as well as the recent passing of his father") (collecting cases).

After being substituted as a defendant in this action, Norene appeared through counsel within a month and quickly sought to vacate the default. Thus, there is no evidence that Norene failed to participate in this litigation once she was named as a party.

Because the default was not willful either by Harry Pfeffer or Norene Pfeffer, this factor weighs in favor of finding good cause to vacate the default.

### 2. Prejudice to Invesco and Grossman

"[D]elay alone is not a sufficient basis for establishing prejudice" to a non-defaulting party by vacating a default. *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). "Similarly, 'costs incurred with respect to countering a defendant's motion to vacate do not constitute prejudice.'" *Leger v. Navila Asset Mgmt. Inc.*, No. 20 CV 3820 (EK)(RML), 2023 WL 2352843, at *7 (E.D.N.Y. Feb. 6, 2023), *report and recommendation adopted*, No. 20-CV-3820 (EK)(RML), 2023 WL 2349581 (E.D.N.Y. Mar. 3, 2023) (quoting *OneWest Bank, N.A. v. Ruiz*, No. 14-CV-3207 (RRM)(RLM), 2018 WL 1318983, at *3 (E.D.N.Y. Mar. 13, 2018)). "To demonstrate prejudice, [a plaintiff] must establish 'that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud or collusion.'" *Global Gold Mining*, 983 F. Supp. 2d at 388 (quoting *Davis*, 713 F.2d at 916).

Plaintiff argues that its "expenditure of time and money" on this case, coupled with the delay caused by vacatur of the default, would prejudice it, particularly in its role as an interpleader plaintiff. (Pl. Reply at 6.) Plaintiff cites to *Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 17-CV-5001 (MKB)(RML), 2020 WL 6390162 (E.D.N.Y. Nov. 2, 2020) for the proposition that "delay *and* costs may amount to prejudice." (Pl. Reply at 6.) In *Manzanares*, however, the court did not consider delay and costs alone sufficient to find prejudice; the court also identified a risk that evidence

8

would be more difficult to locate, particularly because the defendants seeking to vacate the default had altered evidence in a similar case. *Manzanares*, 2020 WL 6390162 at *8.

Grossman argues that he will be prejudiced if the default is vacated because he will "have to prosecute a crossclaim against a Co-Defendant that has not set forth a sufficient excuse for the default nor a meritorious defense." (Grossman Opp. at 12.)

Plaintiff and Grossman do not state any basis for finding prejudice other than the time and money spent on litigation; they do not identify any loss of evidence, increased difficulty conducting discovery, or opportunities for fraud or collusion resulting from vacatur. Accordingly, I find that setting aside the entry of default will not prejudice Plaintiff or Grossman, and that this factor weighs in favor of vacating the default.

### 3. Meritorious Defense

A defendant seeking to vacate a default "need only meet a low threshold to satisfy [the meritorious defense] factor." *MD Produce*, 304 F.R.D. at 110. "[A] defense is meritorious if it is good at law so as to give the fact-finder some determination to make. Likelihood of success is not the measure. [Defendant's] allegations are meritorious if they contain even a hint of a suggestion which, if proven at trial, would constitute a complete defense." *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000) (internal quotation marks and citations omitted); *accord MD Produce*, 304 F.R.D. at 110. "[T]he court may find a meritorious defense if a party raises a valid factual dispute that could change the outcome of the case." *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2010 WL 3767141, at *5 (E.D.N.Y. Aug. 9, 2010), *report and recommendation adopted*, No. 05-CV-0985 (RRM)(RML), 2010 WL 3744052 (E.D.N.Y. Sept. 20, 2010).

Norene Pfeffer makes assertions that, if substantiated, would suggest that Harry Pfeffer, rather than Grossman, is the proper beneficiary of the Account. She argues that following Oppenheimer's Fraud Department's review, Grossman was removed as beneficiary on the accounts, and Harry Pfeffer

9

was reinstated as beneficiary. The Final Guardianship Order required Vera to leave this designation in place, regardless of whether Vera believed that Grossman was the beneficiary. Therefore, Harry Pfeffer, not Grossman, was the rightful beneficiary of the Account at the time of Jack's death. (Pfeffer Mem. at 9.) Grossman disputes this chain of events and their legal implications, but Norene has raised valid disputes of fact that would constitute a meritorious defense.

Because Norene Pfeffer has made allegations that, if proven at trial, would lead to a determination that Harry Pfeffer was the proper beneficiary of the Account, I find that she has raised a meritorious defense. This factor thus weighs in favor of vacating the entry of default.

\*   \*   \*

Because all three factors weigh in favor of vacating the entry of default, I find that Norene Pfeffer has demonstrated good cause for vacatur and I respectfully recommend that the entry of default be vacated.

## II.   Motion for Default Judgment

In light of my recommendation that the entry of default against Norene Pfeffer be vacated, I further recommend that Plaintiff's Motion for Default Judgment against Norene Pfeffer be denied as moot. *See Diaz v. Westbury Pancake House, Inc.*, No. 16-CV-743 (DRH)(SIL), 2017 WL 650733, at \*8 (E.D.N.Y. Feb. 1, 2017), *report and recommendation adopted sub nom. Diaz v. Westbury Pancake House, Inc. doing business as Int'l House of Pancakes, LLC*, No. CV 16-743(DRH)(SIL), 2017 WL 639253 (E.D.N.Y. Feb. 16, 2017) (denying as moot a motion for default judgment where the Court vacated the entry of default) (collecting cases). A default judgment may not be entered without an underlying entry of default. *See Mickalis Pawn Shop, LLC*, 645 F.3d at 128.

10

### III. Motion for Interpleader Relief

Plaintiff requests that the Court issue an order directing it to transfer the Account to Grossman and declaring that, upon transfer, Plaintiff is discharged from this action with prejudice. (Motion at 1-2; Pl. Mem. at 6,11.)

Plaintiff's motion for interpleader relief is premised on the Court granting default judgment against Norene Pfeffer, leaving Grossman as the sole claimant to the Account. (Pl. Mem. at 1.) Because I recommend that Plaintiff's Motion for Default Judgment be denied, I find that Plaintiff's request for the Court to award the Account to the "non-defaulting claimant" (Pl. Mem. at 11) is premature, and I respectfully recommend that the request to transfer the Account to Grossman be denied.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's Motion for Default Judgment and Interpleader Relief be denied and that Norene Pfeffer's Cross-Motion to Vacate the Entry of Default be granted.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
             August 16, 2023