UNITED STATES DISTRICT COURT
<u>EASTERN DISTRICT OF NEW YORK</u>

INVESCO INVESTMENT SERVICES, INC.,

          *Plaintiff*,

    -against-

JONATHAN GROSSMAN AND NORENE PFEFFER
*in her capacity as the Administrator of the estate of*
*defendant Herschel Harry Pfeffer*,

          *Defendants*.

20-CV-4887 (ARR) (PK)

<u>NOT FOR ELECTRONIC
OR PRINT PUBLICATION</u>

**OPINION & ORDER**

ROSS, United States District Judge:

I have received the Report and Recommendation on the instant case, dated August 16, 2023, from the Honorable Peggy Kuo, United States Magistrate Judge. R. & R., ECF No. 49. Judge Kuo recommends that plaintiff's Motion for Default Judgment and Interpleader Relief be denied and that defendant Norene Pfeffer's Cross-Motion to Vacate the Entry of Default be granted. *Id.* at 1. Plaintiff filed objections to portions of the Report and Recommendation on August 30, 2023. Pl.'s Obj. to R. & R. ("Pl.'s Obj."), ECF No. 51.

After reviewing the record *de novo*, *see* 28 U.S.C. § 636(b)(1), I find Judge Kuo's determinations reasonable and plaintiff's objections without merit. I also find no clear error in those portions of the Report and Recommendation to which plaintiff does not object. Accordingly, I hereby adopt the Report and Recommendation as the opinion of the court.

## BACKGROUND

I assume familiarity with the underlying facts as detailed in Judge Kuo's Report and Recommendation and provide only a summary of the relevant facts here.

This case is an interpleader action arising out of uncertainty as to which defendant is the

proper beneficiary of a Transfer-on-Death ("TOD") brokerage account (the "Account"). Compl. ¶ 1, ECF. No. 1. Plaintiff, Invesco Investment Services, Inc., is the transfer agent for the Account. *Id*. The Account was originally held as two separate accounts (the "Predecessor Accounts") at Oppenheimer Funds ("Oppenheimer") by Jack Pfeffer, who died in 2019. *Id*. ¶¶ 11, 23–24. Plaintiff became the transfer agent of the consolidated Account when plaintiff's parent company indirectly acquired Oppenheimer's parent company in 2019. *Id*. ¶ 24.

As of 2011, prior to Jack Pfeffer's death, the designated TOD beneficiary of the Predecessor Accounts was Jack's brother, Herschel "Harry" Pfeffer. *Id*. ¶ 11. On November 22, 2011, Oppenheimer received a signed and guaranteed TOD Registration Form from Jack Pfeffer naming defendant Jonathan Grossman as the new beneficiary of the Predecessor Accounts. *Id*. ¶ 14, Ex. B, ECF No. 1-5. On March 15, 2012, the Supreme Court of New York, Kings County found Jack Pfeffer to be "a person in need of a guardian" and appointed the Vera Institute of Justice ("Vera") as his "Guardian of the Property and Co-Guardian of the Person." *Id.*, Ex. C, ECF No. 1-6. Over the following years, conflicting actions by Jack Pfeffer and Vera created uncertainty as to whether Harry Pfeffer or Jonathan Grossman was the proper beneficiary of the Predecessor Accounts. Compl. ¶¶ 16–22.

Following Jack Pfeffer's death and plaintiff's designation as transfer agent of the consolidated Account, plaintiff initiated this interpleader action on October 9, 2020. *See* Compl. Jonathan Grossman was served on October 12, 2020. *See* Executed Summons, ECF No. 7. In his Amended Answer, Mr. Grossman asserts various counterclaims against plaintiff for failing to transfer the Account to him, as well as a counterclaim against plaintiff and a crossclaim against Harry Pfeffer seeking a declaratory judgment that Mr. Grossman is the correct beneficiary of the Account. Am. Answer to Interpleader Compl., Countercl. and Cross-cl., ECF No. 13.

Harry Pfeffer was served on October 28, 2020. *See* Executed Summons, ECF No. 8. By this time, Harry Pfeffer's health had "deteriorated significantly leaving him housebound and unable to read." Decl. Norene Pfeffer in Supp. of her Cross-Mot. ¶ 3 ("Pfeffer Decl."), ECF No. 48-9. His daughter, defendant Norene Pfeffer, was "acting as [her] father's round the clock nurse" during this period and eventually "discovered the lawsuit among his papers at some point late in 2020." *Id*. ¶ 5. Though Ms. Pfeffer made several attempts to contact attorneys regarding the lawsuit, she was ultimately unsuccessful in securing legal representation for her father. *Id*. ¶¶ 8–9, 11. In her Declaration, Ms. Pfeffer explains that during this time she was "extremely busy caring for [her] father as he recovered from two strokes and pneumonia" and was herself "in excruciating pain" from a back injury sustained "carrying [her] father to his bed." *Id*. ¶¶ 7, 10.

After Harry Pfeffer failed to answer or otherwise respond to the Complaint, plaintiff requested a certificate of default, which the Clerk of the Court entered on May 18, 2021. Req. for Certificate of Default, ECF No. 24; Clerk's Entry of Default, ECF No. 25. On September 27, 2021, plaintiff informed the court that Harry Pfeffer had died on May 2, 2021, and that Ms. Pfeffer had been declared administrator of his estate. Pl.'s Mot. Extension of Time 1, ECF No. 34. (Ms. Pfeffer became administrator of the estate on June 11, 2021. Pfeffer Decl., Ex. 2, ECF No. 48-11.) Judge Kuo permitted plaintiff to substitute Ms. Pfeffer, in her capacity as administrator of Harry Pfeffer's estate, as a defendant on October 18, 2021. Order Granting Mot. to Substitute Party, ECF No. 36. Counsel for Ms. Pfeffer entered an appearance on November 12, 2021, and, four days later, sought leave to file a motion to vacate the entry of default. Notice of Appearance, ECF No. 37; Def.'s Mot. for Extension of Time 1, ECF No. 39.

On March 2, 2022, the parties filed the following: Plaintiff's Motion for Default Judgment, ECF No. 48; Norene Pfeffer's Cross-Motion to Vacate the Entry of Default, ECF No. 48-7;

Jonathan Grossman's Opposition to the Cross-Motion to Vacate the Entry of Default, ECF No. 48-15; Plaintiff's Memorandum of Law in Further Support of its Motion for Default Judgment, ECF No. 48-19; and Norene Pfeffer's Reply Memorandum of Law in Support of her Cross-Motion, ECF No. 48-20.

I referred the motions to Judge Kuo on March 3, 2022. Docket Order Referring Motion, Mar. 3, 2022. On August 16, 2023, Judge Kuo recommended that plaintiff's Motion for Default Judgment and Interpleader Relief be denied and that Ms. Pfeffer's Cross-Motion to Vacate the Entry of Default be granted. R. & R. 1. Plaintiff timely filed objections to Judge Kuo's recommendation on August 30, 2023, Pl.'s Obj., and Ms. Pfeffer filed a Response to Plaintiff's Objections on September 10, 2023, Def.'s Mem. L. in Resp. to Pl.'s Obj., ECF No. 52.

## LEGAL STANDARD

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations" made by a magistrate judge. 28 U.S.C. § 636(b)(1). If a party timely objects to proposed findings or recommendations, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*; *see* Fed. R. Civ. P. 72(b). Where no objections have been filed, "the district court need only satisfy itself that there is no clear error on the face of the record." *Finley v. Trans Union, Experian, Equifax*, No. 17-CV-371 (LDH), 2017 WL 4838764, at *1 (E.D.N.Y. Oct. 24, 2017) (quotation omitted). I therefore review *de novo* those portions of the Report and Recommendation to which plaintiff objects and review the remaining portions for clear error.

## DISCUSSION

Plaintiff objects to Judge Kuo's recommendation that Ms. Pfeffer's cross-motion to vacate the entry of default be granted. Pl.'s Obj. 1, 10. A court may set aside an entry of default "for good

cause." Fed. R. Civ. P. 55(c). The Second Circuit has established three factors for determining whether "good cause" exists to set aside an entry of default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These factors are assessed less rigorously in the context of a motion to vacate an entry of default, because vacatur of an entry of default presents fewer issues of "finality and litigation repose" than does vacatur of default judgment. *Id.* Moreover, in the Second Circuit, "defaults are generally disfavored," and doubts should be resolved in favor of the party seeking relief. *Id.*

In the Report and Recommendation, Judge Kuo determined that all three factors for determining "good cause" weighed in favor of vacating the entry of default. R. & R. 10. Plaintiff objects to this determination with respect to two of the three factors as they relate to defendant Norene Pfeffer, namely: (1) that Ms. Pfeffer's default was not willful; and (2) that plaintiff will not be prejudiced by setting aside the entry of default. Pl.'s Obj. 1.

**I.    Norene Pfeffer's Willfulness.**

Judge Kuo's finding that Ms. Pfeffer's default was not willful rested on two determinations. First, Judge Kuo concluded that Ms. Pfeffer did not have an obligation to respond to the Complaint until she was named as a party to the action, and there was "no evidence that Norene failed to participate in this litigation once she was named as a party," given that Ms. Pfeffer appeared in the action within a month of being substituted as defendant and "quickly sought to vacate the default." R. & R. 7–8. Second, Judge Kuo found that even if Ms. Pfeffer did have an obligation to respond to the action before being named as a party, she faced "hardships" at that time that "limited her ability to do so." *Id.* at 7. These hardships included Ms. Pfeffer's role as her father's full-time caretaker, her severe pain from a back injury, and her "emotional dist[ress]" immediately following

her father's death. *Id*.

Plaintiff raises two principal objections to these findings. First, plaintiff argues that Ms. Pfeffer had an obligation to respond to the action upon being named administrator of Harry Pfeffer's estate in June of 2021. As evidence of this obligation, plaintiff notes that "it is axiomatic under New York law that the administrator of an estate 'has the power to contest . . . any claim . . . against the estate,'" that, "as a fiduciary, the estate administrator must take all necessary steps to preserve estate assets," and that under Federal Rule of Civil Procedure 25, Ms. Pfeffer could have filed a motion to substitute the estate once she was declared administrator. Pl.'s Obj. 7 (quoting N.Y. Est. Powers & Trusts Law § 11-1.1 and citing *Matter of Est. of Spiak*, 175 N.Y.S.3d 582 (2022)). Second, plaintiff takes issue with Judge Kuo's consideration of Ms. Pfeffer's "hardships" in determining that the default was not willful. Pl.'s Obj. 8.

Plaintiff's arguments are unconvincing. The Second Circuit has interpreted "willfulness," in the context of default, to mean conduct that is "more than merely negligent or careless," but is instead "egregious" and "not satisfactorily explained." *Bricklayers & Allied Craftworkers Loc. 2, LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quotation omitted). Though willfulness does not require a finding of bad faith, default still must be the "deliberate and intended consequence of [the] movant's actions." *Aetna Life Ins. Co. v. Licht*, No. 03-CV-6764 (PKL), 2004 WL 2389824, at *4 (S.D.N.Y. Oct. 25, 2004) (citing *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir.1998)). Further, courts should "resolve any doubt about [a party's] willfulness in his favor." *HICA Educ. Loan Corp. v. Feintuch*, No. 12-CV-5243 (ADS), 2013 WL 1898997, at *4 (E.D.N.Y. May 7, 2013) (quotation omitted).

Ms. Pfeffer's conduct cannot be considered "willful" under this standard. First, though Ms. Pfeffer was aware of the litigation and, as plaintiff notes, *could* have taken steps to enter as a party

upon being named administrator of her father's estate, her failure to take these proactive measures does not rise to the level of "egregious" conduct necessary for willful default. Moreover, as Judge Kuo reasoned, even if Ms. Pfeffer had such an obligation under normal circumstances, she was experiencing hardships during the period following her father's death that excuse her failure to act. Specifically, Ms. Pfeffer states that from roughly October 2020 to October 2021, she was in "excruciating pain" from a "fracture of two bones in [her] back," which she sustained while caring for her father during his final months. Pfeffer Decl. ¶ 10. Ms. Pfeffer also states that she was "emotionally distraught" from the death of her father, with whom she was "extremely close." *Id*. ¶ 13. These circumstances explain Ms. Pfeffer's failure to take affirmative steps to enter the litigation and further underscore that her conduct should not be considered "egregious" or willful.[1]

In arguing that Ms. Pfeffer's "hardships" do not "excuse the default," plaintiff discusses multiple cases, none of which is persuasive. First, plaintiff cites *Carcello v. TJX Cos., Inc*., 192 F.R.D. 61 (D. Conn. 2000) and *Williams v. New York City Department of Corrections*, 219 F.R.D. 78 (S.D.N.Y. 2003) for the proposition that "illness alone is not a sufficient basis for setting aside a judgment under Rule 60(b)(1)." Pl.'s Obj. 7 (quoting *Carcello*, 192 F.R.D. at 64). As an initial matter, the motion at issue here is not a motion to set aside a judgment under Federal Rule of Civil Procedure 60(b)(1). Rather, it is a motion to vacate an entry of default under Rule 55(c), which, as discussed, should be assessed under a less rigorous standard. *Diakuhara*, 10 F.3d at 96.

---

[1] Plaintiff also stresses that Ms. Pfeffer "reached out to several New York lawyers regarding this litigation, and that one of these lawyers informed her of the need to appear in the action." Pl.'s Obj. 6. This fact has little relevance to plaintiff's principal argument that Ms. Pfeffer should have appeared in the action after being named administrator of Harry Pfeffer's estate. For one, Ms. Pfeffer made these initial attempts to contact attorneys *prior* to her father's death and her appointment as administrator of his estate, and she was advised during these conversations of her *father*'s need to appear as a party. Pfeffer Decl. ¶¶ 8–9, 11. Moreover, as previously stated, the fact that Ms. Pfeffer was aware of the litigation prior to being named as a party does not make her failure to appear willful.

Additionally, Ms. Pfeffer does not rely on "illness alone" to justify setting aside the entry of default. Specifically, Ms. Pfeffer also argues that setting aside default will not prejudice plaintiff and that she has a meritorious defense in the underlying action. *See* Def.'s Mem. L in Supp. of Cross-Mot. 8–10, ECF No. 48-8. Indeed, plaintiff does not object to Judge Kuo's finding that Ms. Pfeffer raised a meritorious defense in her motion. R. & R. 10. As such, Ms. Pfeffer's back injury is simply one of multiple factors that supports setting aside the entry of default.

 Plaintiff also takes issue with Judge Kuo's reference to *Feintuch* to support the finding that, "in light of [Ms. Pfeffer's] circumstances," she "did not act willfully or engage in deliberate or egregious conduct leading to default." R. & R. 7. In *Feintuch*, the court considered the defaulting party's hardships—specifically, the "serious medical issues involving his then three-year-old daughter," as well as "the recent passing of his father"—in concluding that his default was not willful. 2013 WL 1898997, at \*4. Plaintiff argues that *Feintuch* is nonetheless "inapposite" because "a key consideration in finding that the defendant's default was not willful was that there was only slight delay (two weeks) in defendant's response [to the entry of default]." Pl.'s Obj. 8.

Plaintiff overstates the significance of this point. First, *Feintuch* clearly considered personal hardship as a relevant factor in determining willfulness, even if, as plaintiff notes, it was not the only factor the court considered. Other courts in this circuit have similarly weighed hardship in assessing willfulness. *See, e.g.*, *Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12-CV-52 (JPO), 2013 WL 1809637, at \*4–5 (S.D.N.Y. Apr. 30, 2013) (attorney's default likely did "not rise to the level of willfulness" where attorney was experiencing a "dire family crisis"); *Licht*, 2004 WL 2389824, at \*4 (finding "excusable neglect" under the more stringent Rule 60(b) standard where failures leading to default were due, in part, to "unexpected illnesses[] afflicting both [the attorney] and his family"). Moreover, to the extent that *Feintuch* turned on the fact that

there was only a "slight delay" in the defendant's response to the entry of default, it is worth noting that once Ms. Pfeffer was substituted as defendant, she promptly sought leave to vacate the entry of default within a month. For these reasons, *Feintuch* supports Judge Kuo's determination that Ms. Pfeffer "did not act willfully." R. & R. 7.

Accordingly, I find that Judge Kuo correctly determined that Ms. Pfeffer did not willfully default.

## II.   **Prejudice to Plaintiff.**

In the Report and Recommendation, Judge Kuo determined that setting aside the entry of default will not prejudice plaintiff given that plaintiff did not "state any basis for finding prejudice other than the time and money spent on litigation." R. & R. 9. Judge Kuo explained that neither delay nor litigation costs constitute prejudice; rather, plaintiff must also establish that delay will result in a loss of evidence, discovery difficulties, or opportunity for fraud or collusion. *Id.* at 8.

Plaintiff objects that "default will undoubtedly prejudice [p]laintiff given (i) the time and money that [p]laintiff has already expended litigating the case and (ii) the amounts of time that has passed since the filing of this action and the default by the Pfeffer defendants." Pl.'s Obj. 9. With respect to plaintiff's first point, as Judge Kuo clearly explained in the Report and Recommendation, delay and litigation costs alone are not sufficient to establish prejudice. *See, e.g*, *Diakuhara*, 10 F.3d at 98 ("[D]elay standing alone does not establish prejudice."); *Gesualdi v. Gayle Bard Landscapes, Inc.*, No. 10-CV-5762 (ARR) (LB), 2011 WL 2457882, at *3 (E.D.N.Y. May 31, 2011), *report and recommendation adopted*, No. 10-CV-5762 (ARR) (LB), 2011 WL 2432936 (E.D.N.Y. June 16, 2011) ("[C]osts and legal fees in pursuing a default judgment, as well as the costs incurred with respect to countering a defendant's motion to vacate, do not constitute prejudice.").

Plaintiff next argues that "[g]iven the passage of time, there is a significant risk that memories may have faded and that other evidence may be difficult to obtain." Pl.'s Obj. 9. I first note that plaintiff did not raise this argument in its initial motion for default or in its opposition to the cross-motion to vacate the entry of default,[2] and a district court "need not entertain new grounds for relief or additional legal arguments that were not before the magistrate judge." *Sampson v. Saul*, No. 19-CV-6270 (PAE), 2020 WL 6130568, at *3 (S.D.N.Y. Oct. 16, 2020) (quotation omitted).

Regardless, plaintiff does not provide any specific information to suggest that the five-month delay it attributes to Ms. Pfeffer (following her appointment as administrator of Harry Pfeffer's estate) resulted in a loss of evidence or other discovery difficulty. Nor is such a loss of evidence apparent from the record. One principal witness in the case, Harry Pfeffer, died before the five-month period in question. Another principal witness, Jonathan Grossman, submitted an affidavit with his most recent filing suggesting that his memory remains intact. *See* Aff. of Def. Jonathan Grossman in Opp'n to Cross-Mot., ECF No. 48-16; *see also Gil v. Frantzis*, No. 17-CV-1520 (ARR) (SJB), 2019 WL 5694074, at *12 (E.D.N.Y. Aug. 22, 2019), *report and recommendation adopted*, No. 17-CV-1520, 2019 WL 4784674 (ARR) (SJB) (E.D.N.Y. Oct. 1, 2019) (finding no prejudice where the declarations of principal witnesses "do not suggest fading memories or a lack of knowledge").

Further, and as a point of comparison, in the two cases plaintiff cites, concerns about loss

---

[2] *See* Pl.'s Mem. L. in Supp. of Mot. Default J., ECF No. 28; Pl.'s Mem. L. in Opp'n. to Cross-Mot. to Vacate Default J., ECF No. 48-19. Plaintiff states that "this argument concerning the effects of delay on discovery was not made in the originally-filed Motion for Default Judgment because, at the time it was filed, the litigation had not been long pending." Pl.'s Obj. 10 n.3. However, this rationale does not explain why plaintiff did not raise the issue in the opposition to Ms. Pfeffer's motion to vacate the entry of default, which plaintiff filed almost a year later, on March 2, 2022.

of evidence were substantiated by the defaulting party's prior history of altering or destroying evidence. *See Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 17-CV-5001 (MKB), 2020 WL 6390162, at *8 (E.D.N.Y. Nov. 2, 2020) ("Plaintiffs' concerns about potential destruction of evidence given that Default Defendants had altered evidence in another similar case support a finding of prejudice."); *S.E.C. v. Breed*, No. 01-CV-7798 (CSH), 2004 WL 1824358, at *13 (S.D.N.Y. Aug. 13, 2004) (finding prejudice where defendant had "already destroyed documents subject to subpoena"). Plaintiff has not identified a similar threat here.

In sum, I find that plaintiff's objections lack merit and that Judge Kuo correctly determined that setting aside the entry of default will not prejudice plaintiff.

## CONCLUSION

Because I find that Judge Kuo's Report and Recommendation withstands plaintiff's objections, and because I find no clear error in those portions to which plaintiff does not object, I adopt the Report and Recommendation as the opinion of the court. Plaintiff's motion for default judgment and interpleader relief is denied, defendant Norene Pfeffer's cross-motion is granted, and the entry of default is vacated.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:         September 15, 2023
               Brooklyn, New York